Good morning, Joshua Bacharach. I represent the defendant, Appellant at Reliance Standard Life. I'd like to reserve four minutes of time for rebuttal. We're appealing from the district court decision that it was wrong for Reliance Standard to discontinue disability benefits under the ERISA plan. Before he stopped working, Mr. Avenoso was a maintenance supervisor, which is a light-duty occupation. And this is on summary judgment, right? It is on summary judgment, correct, which leaves I'm probably anticipating, I'll let Your Honor ask the question before I jump in. My question was is whether or not that this was actually, if you look at the findings that the court made, they look like bench trial findings, right? And so is there any reason why we would send this back to hold a bench trial? Is there any evidence that that you would anticipate would be presented that has not already been presented? No, Your Honor, because under ERISA, we're limited to the administrative record, right? So all that evidence was considered. The parties agreed that the court could review it in this manner. I know it's a it's an iffy question on on ERISA cases, how the court decides them. Some courts will say we do it findings of fact, conclusions of law. As Your Honor just said, that's essentially what was done here. Well, then don't we have to see this is the problem with doing it the way the District of Minnesota is doing it because they call it summary judgment. So we're in de novo land, but if it's a bench trial, it's more deferential. It's clear error as to factual findings, and this is almost all factual findings. So what do we do when we're in summary judgment land, according to the District Court, but we have findings? What would you suggest we do? Well, a lot of courts, the First Circuit, the Ninth Circuit, the Tenth Circuit, and I believe a few others, have said that really the summary judgment motion is just the vehicle to get the issue before the court, right? To have the court address the question. So whether you call it, in fact, the Sixth Circuit still hasn't decided. They've been tossing around that question for years and said either way. So it really brings the issue, the question is how do you bring the issue to the court? But then the tangential issue is how is the District Court's decision reviewed? As Your Honor is alluding to, is it under a clear error standard or does this court sit de novo? Because most of these ERISA cases say that you sit de novo and review what the District Court did. In my argument here, I'm going to take the worst case scenario for me and show to you how the District Court decisions on the facts was clearly erroneous, but I think that's actually not correct. Because what a District Court is doing is looking at a paper record. There are no witnesses. There are no experts. All you've got is a paper record. And how is that court in a different position than Your Honors are? In fact, I would say three heads are better than one. That Your Honors have a better opportunity to look at that record and see if the correct decision was made. So what I'm arguing is I think it is the, you do review it de novo, but I would say that if you take the clearly erroneous, it's clearly erroneous. Is this a situation where the administrator is given discretion in the plan or not? No, this is de novo review. This is one of those cases where the state, I believe, that issued the policy, where it was issued, does not allow it. So it's de novo review. And is it clear then that the District Court is limited to the administrative record? In other words, could the District Court have had a trial, put on the doctors, put on the witnesses, I'll decide who's credible and who's not. No, I think there's only one, maybe two circuits that questionably allow that. Most circuits have said, no, you're still restricted to the administrative record. I believe the case, leading case here is Sandoval that says out of both, no, it's Tenth Circuit, I apologize. But there is authority in this circuit that also says that you're limited to the administrative record because you want people to exhaust their remedies. You want them to use the ERISA plan to make the initial decision based on a full record. And by allowing new evidence to come in, you're defeating the goals of ERISA. What about, I see your point with respect to new evidence. So the doctor comes in and testifies something different than maybe it was before the plan. But that's different if, for example, the claimant were to come in and say, here were my conversations with the plan, right? And some customer service representative. There, that information is clearly before the plan and it may not be part of the administrative record. So I'm not so sure you're right that there couldn't be some evidence that would come in at a bench trial. There could be in a situation, for example, I know I submitted this document to the administrator. It's not in their record and it should be considered. Now you have a question of fact there. You do have credibility issues. I agree under something like that, but that's not the situation here. We had medical opinion. In fact, as I'll get to in a second, the medical evidence doesn't even come close in this case to supporting. I agree, but this draws further doubt into trying to do this on summary judgment, which is there are situations when it would be necessary, maybe not this case, but when it might be necessary to have a trial in order to fully develop the record and decide that it's the case. And just to be clear, to go back to your Honor's point, under the arbitrary and capricious standard, there's no question summary judgment's appropriate. There can't be a trial. There can't be new evidence. Under the abuse of, under the de novo standard, courts have said for good cause. The evidence wasn't available at the time. Or as your Honor just alluded to, that there's some sort of a dispute about it. Then yes, some circuits have said under de novo review you can have that. But in this case, it didn't matter, it didn't approach the, it didn't approach the district court in that way. And what I think is really important here is that even under a clearly erroneous standard, if you want to impute that here, it was. It was clearly erroneous because we don't even have an evidence that this person can't perform sedentary work or was totally disabled from any occupation. We have the district court making findings that the functional capacity evaluation that was performed supports the court's conclusion that he was disabled. And yet the person that performed that evaluation and wrote that report said, I am unable to determine this person's physical capabilities. And said, these are the minimal functional levels. Why? Because there was inconsistent performance during the testing. He did not perform most of the testing. And for a court to look at that when the person doing it says, I'm unable to determine physical capabilities and say that supports the disability, that's clearly erroneous. Now, the fact is that counsel says that the inconsistent performance was because of pain, that he had pain during the testing, that's why he couldn't do all of the exam work. That's not true. Because as the evaluator said that there was evaluation and inconsistent performance when aware and unaware. So what they do is they distract the person, see how are they doing on the same tasks when known. And if there's discrepancy, that's inconsistent. It has nothing to do with pain. And the fact that he did not perform most of the tasks doesn't mean that he couldn't. Dr. Vosak, the treating doctor authorized this. He would not have allowed this FCE to take place if he thought it would harm this person. And we also have evidence here that there was inappropriate behavior. Let me ask you. Doesn't the FCE say that Avanoso didn't demonstrate an ability to tolerate an eight-hour workday, that his ability level would be two to three hours, and he could not safely perform any lifting, carrying, et cetera? And then didn't Vosak say that he had to avoid prolonged sitting? And doesn't sedentary work normally require sitting? Well, so here's the problem with Vosak. The doctor did say that. But also, the more important part was the doctor said he should not return to his previous work as an operations supervisor, which is light duty, not sedentary. And so what does prolonged sitting mean? The doctor didn't quantify. The doctor did not explain. So we know from case law that you can't just give an opinion and say, this person's disabled. This person can't sit. You have to provide an explanation. It's the claimant's burden of proof. And that didn't happen here. And as far as the FCE goes, Your Honor, the FCE said, I am saying this based on the inconsistent performance. I am saying this based on the fact that most of the tests weren't done. But the person who performed the FCE made it clear, these are the minimal findings. And it literally says in the report, it says functional capabilities cannot determine. And for the judge to then say cannot determine that that supports the disability claim, that's clearly erroneous. And there are other factors here that make it even more so. We had an MRI with minimal findings. We had EMG that the doctor requested, which would have shown if there's something to these claims, he refused to undergo it. He also, remember, he said he could only sit or drive for 15 minutes. Yet he drives 35 minutes each way to the FCE and 25 miles, which I assume is more than 35 minutes, to the IME. So there's a lot of evidence here that contradicts what was claimed and his refusal to even do testing. One of the other parts that I think is important here is the judge said, I'm going to rely solely on the complaints, the subjective complaints. But this court has said how important an FCE can be. And here the only reason it was not determinative of his true capabilities is because of inconsistent performance, which means he did not give a proper effort. And Dr. Leva said that he had inappropriate responses to behavior. He's claiming back pain. Let's look at it this way. He's claiming back pain. And yet all of a sudden he's shaking uncontrollably in his arms and legs. There's as Dr. Leva said, there's no physiological explanation for that behavior. None. And so we have an FCE that could not be interpreted because of inappropriateness by the person who's carrying the burden. I do want to move on. Again, I think when you look at the facts, it's clearly erroneous for the district court to rely on the FCE. It's clearly erroneous for the district court to say IMEs by Mr. Avanos' own workers' comp doctor selected by his attorney are independent medical examinations when they aren't. And not only that, they didn't even address the question of any occupation. They referred to a percentage of PT, which what's that mean? There's no explanation in those records. And they're decided a year before the denial of benefits in this case under any occupation standard. So for the court to say that that supports the disability claim was clearly erroneous as well. And I just briefly want to move into the error of law, which is undeniable in this case. And that is for the district court to rely on the social security decision. This court has said it is not binding. And maybe the basis for a social security administration award can be important. But the district court didn't do that. The district court here said based on MetLife versus Glenn, I can find the decision alone that it awarded benefits to be an important factor favoring Mr. Avanosa. MetLife versus Glenn is a Supreme Court case on the standard of review under arbitrary and capricious. The district court imputed an arbitrary and capricious standard into a de novo review, which is wrong under the law. There is no standard less than arbitrary, or I'm sorry, less than de novo. But the court here did that by saying we're going to look at conflict of interest factors, including a social security award. There is no case law anywhere that allows that. It was wrong. And the court clearly relied on that to reach its decision. And I'm he responds to that, because it has no place under de novo review. I'd like to retain my remaining time. Thank you. Very well. Thank you, Mr. McRick. Good morning, Your Honors. Counsel, may it please the court. My name is Zach Schmal and I'm here on behalf of Mr. Avanosa. Mr. Avanosa's position is quite simple. The record clearly supports his claim for disability benefits under the policy under either standard of review. There is no error by the district court, whether it be factual or legal, and the district court decision must be affirmed. There are two overarching issues for the court to consider. The first is a standard of review issue, which was touched on briefly. And as the judges pointed out, there is a bit of a conflict here between how a summary judgment motion is reviewed and then in practice what happens here. In practice, and I think counsel said this too, the summary judgment motion is really just the conduit. It's the vehicle by which the case is presented to the district court. What actually happens is closer to a Rule 52A proceeding, where the district court is making a decision based on a stipulated record and the briefs. And that's really functionally indistinguishable from what happened here. Would you have anything else to submit if this were considered a bench trial? Or are you like opposing counsel and the record's complete? No, the parties agree that the record is complete and the administrative record was the record upon which the court should make their findings. And when I look through Judge Wright's order, analyzing the record, every component of that order is supported by the record. You can go through each component. I think Reliance Standard is confusing a rejection of their evidence and a rejection of their arguments as error. And it's not error. The record simply supports all of the findings that Judge Wright made. But are we to review de novo or for clear error? I believe you're supposed to review this for clear error. And here's why. If you review this under de novo, all you're, what you're doing is you're... How many East Circuit cases that do that? Well, I believe Sloan and Donatelli both say when an ERISA fiduciary's denial of a claim is reviewed de novo, that this court reviews those factual findings under the clearly erroneous standard. Now, I believe those cases were presented under a stipulated record and a proceeding on the brief. So that's where there is, it is a little gray. Now, how about... Isn't what happened in Sloan procedurally, didn't the district court judge specifically say, you've got to perform me on summary judgment. It's not appropriate for summary judgment. Are you really asking for me to try it on a stipulated record, right? Right. Then they say, yeah, fine, stipulated record. He then tries it on the stipulated record and it comes up on appeal, right? Right. I mean, that's a totally different animal here. It is. It's functionally indistinguishable from what happened here, though. Because we've got a stipulated record. The parties brief that record for the district court. And the district court is tasked specifically with making factual findings based on the stipulated record and applying the legal principles to those factual findings. And it's just so contrary to normal summary judgment where there's no fact findings. We would chastise a district court for making fact findings on summary judgment. Right. And this is something that I've considered a lot as this case has proceeded and going through, as Judge Erickson pointed out, what happened in Sloan. Maybe a 52A proceeding is more appropriate. It is industry standard that these cases are presented to the district court based on summary judgment motions. I did not make that up. Did you stumble upon RIDL versus General American Insurance where I think we reviewed DeNovo, a summary judgment, I think in a similar situation in an ERISA case? Yes. So what do we have conflicting? Where are we? Yeah. I don't know that RIDL was, I believe you did review that DeNovo. I believe that may have been an abuse of discretion standard at the district court level, which I don't think there's any dispute is reviewed DeNovo. I think that is a difference there. I believe it was RIDL where the district court actually, just to jump to the issue of the Social Security decision, I believe that was the case where the district court actually remanded back to the insurance company for consideration of a Social Security decision that was not a part of the record, that came in after the fact, after the administrative record had closed. I think we're really looking at the whole Social Security issue and what to do with how is the conflict of interest analyzed under an abuse of discretion. In that court, MetLife was admonished for essentially completely disregarding the Social Security decision, and it was instructive in that that decision can be analyzed to consider the conflict of interest when reviewing an insurer's abuse of discretion denial. I cannot find, and I do not think counsel has pointed to any case law that says the Social Security decision should not be considered. Nobody is saying it's binding. Counsel, I want to step back. I'm still stuck on this crazy procedure. I just want to know, in your view, did the district court know what it was doing? I know I don't mean that in a pejorative sense. I mean, did the district court actually know it was effectively holding a bench trial versus holding a summary judgment hearing? Because that would be the argument for remanding and saying, look, you did the wrong inquiry. We want to make sure you're actually having a bench trial and do it again. Even if it means just adopting the same set of findings, at least it'll be clear on appeal what's going on. Your Honor, I believe the district court knew exactly what it was doing. Actually, this issue was briefed by a letter by defense counsel subsequent to oral argument at the district court level. On page three of the district court's order, it says, under a de novo review, a district court acts as the facts finder, makes credibility determinations, and weighs the evidence as applied to the governing insurance policy. That's citing Donatelli. That's exactly what the district court did correctly. They correctly and very thoroughly reviewed the record. They made factual findings that are supported. There is not one finding in Judge Wright's order that is not supported by the record. Jumping back real quick to the Social Security decision, there's no case law that says it shouldn't be considered. The policy issued by Reliance Standard requires the claimant to pursue those benefits. It's disingenuous for Reliance Standard or any other insurance company to stand here and say, we're going to require you to pursue this claim that we all know is similar enough to what this policy provides. We don't even have to consider it. It's not binding on them. It's not binding on the district court. We've never argued that. Nobody's saying that. Judge Wright doesn't say that in her order either. She specifically says it is not binding. There's no case law that says it can't be considered. It's just another example of when Judge Wright looked at the evidence in total, reviewed this administrative record, approximately 1,500 pages, and makes these findings, that finding supports Mr. Avinoso's claim. So what evidence, Mr. Backrack says there's no evidence of total disability. What evidence? The MRI was not very strong for you. The MRI, I agree. The MRI in January of 19 is not very strong. When you go through Judge Wright's order, it's broken down into essentially the main argument components of the case. You've got the prior back surgeries that are essentially deemed to be failed surgeries. There's no dispute about his medical history. Again, and counsel cites case law after case law that says diagnoses do not prove a disability claim. I agree with you. We're not saying that. But they weigh in the favor of Mr. Avinoso. What specific evidence is there that he can't do sedentary work? The FCE. Let's jump to the FCE because, in my opinion, the case could actually just turn on the functional capacity evaluation by itself, which I think is so clearly in support of Mr. Avinoso. Judge, as you said, it does say unable to determine. But when you go through, you have to take the whole FCE report in total. What Counsel for Reliance Standard is doing is saying that that supports their claim. It just doesn't. If you read it, cherry picking the facts to support Judge Wright's decisions. She says no lifting, pulling, or carrying of objects. Two to three hours of work a day was the maximum. That's kind of all spread throughout the FCE. But at the end of the day, the real issue is still going to be those are findings. Are we going to review those for clear error or are they still de novo to us? She's doing a de novo review, which she says requires her to be the fact finder. Now she's gone through the record and she's made these conclusions. If you start with the first part of her opinion and she sets out clearly what you do in summary judgment cases, then you add this paragraph, which seems entirely at odds with everything that's said before that. Now we have really a dispute about the FCE and the factual conclusions that the judge actually made. On a trial and stipulated facts, we would certainly be in clear error land on those factual findings, right? How long can you sit in a day, two to three hours? Any lifting, no? Any pulling? Now what? Judge, to your point, yes. Again, I believe that this should be reviewed under a clearly erroneous standard. The factual findings should be reviewed under a clearly erroneous standard. Even if you review it under a de novo standard, the weight is so heavily past 51% in favor of Mr. Avenoso that it still mandates affirming this order and an approval of his claim. In that functional capacity evaluation, the defense is really caught up on this inconsistent performance statement. Inconsistent performance when aware and when unaware. How that should be being watched? He performed inconsistently, which is exactly what you would expect with somebody that has the level of pain complaints that Mr. Avenoso says, which again is supported by all the history of the medical records. There's no dispute that he has these conditions. The question was to what extent do they impair his ability to work? The functional capacity evaluator didn't even perform all of the testing. The evaluator determined it was not safe to That alone would preclude him from sedentary work, which requires some amount of negligible lifting frequently or occasionally lifting up to 10 pounds. That alone, just the fact that he's not safely able to perform those in a testing setting, would preclude him from sedentary work. An inability to sit for more than a few minutes at a time without shaking in pain. The whole shaking and pain thing has come up repeatedly. It wasn't just Dr. Leva that observed that. Dr. Leva was the doctor hired by Reliance Standard, who is the only doctor Reliance Standard says is independent, but he's the only doctor hired by them. All of the medical professionals observed this shaking with pain. Dr. Leva is the only one that completely disregards that. Going back just real quickly to the functional capacity evaluation, the defense continuously argues that the inconsistent performance was a result of him not trying his best. The report specifically says he displayed maximal effort during the testing. He gave it his best. There's also a statement in the functional capacity evaluation that says, the physical behavior throughout the exam was consistent with the physiological responses, heart rate and respiratory rate, and movement and muscle patterns, both when aware and unaware of observations. What does that mean? It means that his heart rate and his respiratory rate changed as you would expect it to change when he was struggling, when he was in pain. Those are physiological responses that cannot be faked. Dr. Leva, the only doctor in this case that was hired by Reliance Standard, is the only person that has accused Mr. Avinoso of malingering. I find it disingenuous that Reliance Standard continues to assert that their doctor is an independent opinion, the only doctor they hired to quote-unquote examine Mr. Avinoso, who when you look through the report, observes all of the same pain complaints that Mr. Avinoso has made throughout the entire case. Dr. Leva, the only doctor hired by them, is the only doctor to completely disregard all of these obvious observations. Again, I think just to quickly summarize, if you look at this under a clear air standard, it's a very quick, a very brief inquiry for this court. There is not one factual finding by Judge Wright that is not in the record. Every single factual finding is in the record. If you do take a step back and look at the entire record as a whole, and just consider who does it support more, it's Mr. Avinoso by a wide, wide margin. Thank you, Your Honors. Thank you, Mr. Schma. I think it's interesting that counsel says that all the evidence supports his clients, and yet he can cite to it. And the only thing he can cite to is the FCE. And the FCE says under physical capabilities unable to determine. And counsel says that his client could not perform these tests. That's why they weren't done. Again, Dr. Vosak, his own treating doctor, said he can do this FCE. You have to have a prescription for an FCE. A doctor's not going to send him if it would cause harm, but the doctor sent him. He just refused to perform the tests. What about Vosak saying he has to avoid prolonged sitting, and the FCE saying he can't. Don't both of those preclude sedentary work? The doctor, I'm sorry, the evaluator who's a physical therapist says these are the minimal findings. He could have more capabilities. These are the minimal ones based on the minimal testing that they were able to perform. So to say that the district court judges everything he said, she said, is supported by the record, that's incorrect. And there's another factor here that's other than Dr. Leva. That's wrong. And I was looking for the site. I apologize. It's in one of my briefs. His own doctor did, questioned him on the cause of his symptoms. Dr. Knockwalter, who initially submitted the claim form, said that he had extreme limitations based on mental illness. Extreme limitations. One of the workers' comp doctors said that he had 50% PT based on neuropsychological factors. Neuropsychological, not physical. And that's important because we argued in our briefs that this plan has a 24 month limit on mental or nervous disorders. You can only get benefits based on, and I see I'm going to run up. I'll ask if I can finish this thought. Thank you. So you're only allowed 24 months for mental illness. And we have his own doctor saying that there's a mental illness component here. And the district court judge ignored it. And said even though that Dr. Breanu found this neuropsychological issue, the court didn't address our argument that you have to find that there's a physical disability only, not a mental one. And that wasn't done. So if I may just quickly sum, even if you look at clear error, there are clear errors here. But there's also a significant error of law with the way the district court handled the social security decision. Thank you, Your Honor. Thank you. Court appreciates your appearance and arguments today. The case is submitted and we'll do our best to wrestle with it and issue an opinion in due course.